IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHERRY MURRAY and KENNETH MECKFESSEL, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CSX TRANSPORTATION INC., )<br>)<br>Defendant. ) | CIV. ACT. NO. 1:21-cv-58-TFM-M |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendant CSX Transportation, Inc.'s Motion for Summary Judgment* (Doc. 60, filed February 17, 2022) and the supporting brief (Doc. 61). Plaintiffs filed their *Response to Defendant's Motion for Summary Judgment* (Doc. 66, filed March 11, 2022) CSX Transportation, Inc. filed its reply (Doc. 67, filed March 18, 2022). After a careful review of all the written pleadings, motion, response, reply, and the relevant law, the Court **GRANTS** the motion for summary judgment (Doc. 60) for the reasons articulated below.

### I.   PARTIES, JURISDICTION, AND VENUE

Plaintiffs Sherry Murray ("Murray") and Kenneth Meckfessel ("Meckfessel") (collectively, "Plaintiffs") brought suit in this Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) alleging injuries after being struck by a train operated by agents of the defendant, CSX Transportation, Inc. ("CSX" or "Defendant"). Personal jurisdiction and venue are proper under 28 U.S.C. § 1391 because a substantial part of the events, acts, or omissions given rise to this dispute took place in Mobile County within the Southern District of Alabama.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs were part of an Arkansas church group who traveled to Mobile to board a

Page 1 of 10

Carnival cruise ship from the Mobile Cruise Terminal. Doc. 62-1 at 4, Murray Dep. The cruise ship's departure was delayed due to fog. Consequently, boarding occurred in the evening instead of during the day. *Id.* The incident allegedly occurred at approximately 6:30 P.M. on February 4, 2019 at the Madison Street grade crossing[1] in Mobile, Alabama. Doc. 62-1 at 4. The Madison Street crossing is two sets of CSXT railroad tracks at a right angle that include the following traffic-control devices: (1) mast-mounted flashing lights on the right side of Madison Street; (2) overhead flashing lights mounted on a cantilever; and (3) mast-mounted flashing lights on the east side of the track. Doc. 61 at 2-3, 62-2 at 3, Ex. 2(b). Plaintiffs were traveling eastbound with passengers Bart Gregory and his wife Tara Gregory. The CSXT Train Q52004 approached the crossing from the south. Doc. 62-5 at 4-5, Ardis Holley Dep. Murray was driving Bart's red 2016 Dodge Ram pickup truck. 62-1 at 5. Meckfessel was traveling in a passenger van ahead of Murray's vehicle in the traffic going to the Cruise Terminal. Doc. 62-4 at 3.

The night of the incident, Chief Lawrence Battiste was on duty with the Mobile Police Department K9 Unit inspecting commercial trucks and passenger vehicles for explosives that might be brought on the cruise ship. Doc. 62-6 at 3, Battiste Dep. Battiste conducted inspections and provided traffic control near the Madison Street grade crossing. He began directing traffic at the Madison Street grade crossing about forty-five minutes prior to the accident. *Id.* Mobile Police Department traffic officer Ardis Holley provided traffic control service at the intersection of Royal

---

[1] Defendant states that Plaintiffs' Complaint misstates the location of the accident. Defendant avers that the accident occurred at the Madison Street grade crossing in Mobile, Alabama. Doc. 61 at 2, n.1. The record indicates that the location of the accident was at Madison Street. *See* Doc. 62-7 at 3, Affidavit of Shawn Robinson. ("I have personally reviewed the data from the [Event Data Recorder] on Locomotive CSXT 3244. Locomotive 3244 was the lead locomotive pulling train Q52004 northbound through Mobile County, Alabama on February 4, 2019. This train was involved in a collision with a motor vehicle at the grade crossing located at the intersection of Madison Street and CSXT's railroad track at DOT Crossing 351421E in Mobile County, Alabama.").

and Madison Streets. After hearing the train's horn, he moved to the Madison Street grade crossing to direct traffic from the west side of the tracks. Holley was at Madison Street crossing about forty-five to sixty seconds prior to accident. Doc. 62-5 at 10. Both officers state they heard the train's horn before they could see it. Docs. 62-6 at 4; 62-5 at 5. Battiste instructed vehicles on the west side of the crossing to back up and instructed vehicles already on the tracks to pull forward onto the north/south road that runs parallel to the railroad tracks. Docs. 62-5 at 5-6; 62-6 at 6. As the train approached, the flashing red warning lights and bells activated. The train was visible and blowing its horn when Battiste directed two white vans to move forward. Doc. 62-5 at 11. During the time the white vans were being moved, Murray's red pick-up truck was on the west side of the tracks. Murray drove onto the crossing absent instruction from Battiste or any other officer and attempted to squeeze into a space. *Id.* at 10. After Murray drove onto the crossing, Battiste instructed her to pull forward off the tracks and turn to the right to avoid being struck by the oncoming train. Murray did not respond or pull forward. Doc. 62-6 at 6. Similar to Battiste, Holley stated that he saw the headlights of the train, the red flashing lights and bells about twenty seconds prior to the collision. Doc. 62-5 at 6.

      Murray states she did not see the railroad warning signs, the mast-mounted crossbucks, or the red flashing lights. Doc. 62-1 at 6. Murray states, "I didn't even know I was on railroad tracks…it was dark, foggy." *Id.* However, Murray did see the headlight of the train and was told by a police officer that a train was coming and instructed her to get off the tracks. *Id.* at 10. Despite passenger Bart yelling "ram the van" Murray did not pull forward because she did not want to kill the kids in the van in front of her. *Id*. at 8. When the train hit Murray's truck, it also knocked the truck into the van in front of them where Meckfessel was located. *Id*. at 9.

On February 3, 2021, Plaintiffs filed a four (4) count complaint stating that on February 4, 2019 they sustained injuries when a locomotive operated by Defendant struck a pickup truck occupied by Plaintiffs when they were at the Water Street railroad grade crossing in Mobile, Alabama.  Doc. 1 at ¶¶ 2,17-19.

The "First Cause of Action," alleges Negligence and Gross Negligence.  Count 2 alleges Gross Negligence.  Count 3 alleges "Negligent Infliction of Emotional Distress".  Count 4 contains a damages claim which Plaintiffs enumerate as "Punitive Damages".  Doc. 1 at ¶¶ 21-40.  On February 22, 2022, the Court denied the Defendant's Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b).  *See* Doc. 65.

Meanwhile, during the discovery phase, Defendant filed a Motion to Compel Plaintiffs to Respond to Discovery Request on August 3, 2021.  Doc. 19.  Plaintiff filed a response on August 10, 2021.  Doc. 23.  On August 18, 2021, the Magistrate Judge granted Defendant's motion.  Doc. 24.  On September 30, 2021, Defendant filed a Motion to Dismiss Plaintiffs' Claims as Sanctions for Failure to Conduct Discovery and Comply with Discovery Orders on September 30, 2021.  Doc. 25.  Plaintiff filed a response on October 8, 2021, and a hearing was held on October 12, 2021.  Docs. 28, 29.  The Magistrate Judge denied Defendant's motion to dismiss but granted Defendant's motion to compel.  Doc. 30.

On February 17, 2022, Defendant filed the instant motion for summary judgment.  Doc. 60.  On March 11, 2022, Plaintiffs filed their response in opposition to which Defendant replied on March 18, 2022.  Docs. 66, 67.  The Court finds oral argument is unnecessary and accordingly, the motion for summary judgement is ripe for adjudication.

### III.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510.  At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511.  The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 918 (11th Cir. 1993)).  For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23, 106 S. Ct. at 2252.  A party must support its assertion that there is no genuine issue of material fact by "citing

to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). Although facts and reasonable inferences are drawn in the non-movant's favor, the Supreme Court has instructed lower courts that when there is reliable video

recording of disputed events, the facts should be viewed in the light depicted by the video. *See Davidson v. City of Opelika*, 675 F. App'x 955, 957 (11th Cir. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

## IV.  DISCUSSION AND ANALYSIS

Defendant moves this Court to enter summary judgment in its favor as to all claims asserted by Plaintiffs. Defendant avers that Murray's conduct was legally the sole proximate cause of Plaintiffs' alleged injuries and damages, Murray was contributorily negligent, and Plaintiffs have failed to offer substantial evidence to support their claims.[2]

Plaintiffs assert claims against CSX for Negligence, Gross Negligence, Negligent Infliction of Emotional Distress, and punitive damages. Doc. 1 at ¶¶ 21-40. Specifically, Plaintiffs allege that CSX was negligent, grossly negligent, willful, wanton, reckless and careless in operating and controlling the freight train. Plaintiffs contend that CSX's breach of its duties to exercise reasonable care was the proximate cause to plaintiffs' injuries from the accident.

In opposition to Plaintiffs' claims, Defendant contends that Murray's failure to stop, look, and listen and yield the right of way to CSX's train was the sole proximate cause of the accident. Ala. Code § 32-5A-150 provides the "stop, look, and listen" doctrine that is rooted in caselaw. *See, e.g.*, *Southern Ry. v. Randle*, 221 Ala. 435, 438, 128 So. 894, 897 (1930). "The general rule, and governing here to sustain the ruling of the trial court, is that where a motorist fails to 'Stop, Look & Listen' before crossing a railroad track, and he thereby runs into or collides with a train on its track at a public crossing, he is guilty of contributory negligence as a matter of law and his

---

[2] The Court's opinion on the motion to dismiss was delayed and entered after the motion for summary judgment was filed. However, to the extent Defendant incorporates the motion to dismiss into its motion for summary judgment (Doc. 61 at 13-14), that motion to dismiss was denied and summary judgment on that ground is also denied.

negligence will be treated as the sole proximate cause of his injuries." *Lambeth v. Gulf, Mobile & Ohio R.R.,* 273 Ala. 387, 389, 141 So.2d 170, 172 (1962) (citing collection of cases); *See also Norfolk S. Ry. Co. v. Johnson*, 75 So. 3d 624, 639 (Ala. 2011).

Under Alabama law, Murray was required to stop at the railroad grade crossing and not proceed until she could cross safely. Alabama Code § 32-5A-150 lays out the duty an operator of a motor vehicle has when approaching a railroad grade crossing, whereas Alabama Code § 32-5A-61 addresses a motorist's duty not to proceed onto a railroad grade crossing where traffic is obstructed. Specifically, Alabama Code § 32-5A-150 states:

> (a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
>
>    (1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
>    (2) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train;
>    (3) A railroad train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
>    (4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.
> (b) No person shall drive any vehicle through, around, or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed.

ALA. CODE § 32-5A-150. Obedience to signal indicating approach of train.

Alabama Code § 32-5A-61 imposes an additional duty on a motorist to ensure traffic is not obstructed before crossing a railroad grade crossing. Specifically, Alabama Code § 32-5A-61 entitled Driver not to proceed where traffic obstructed states: "No driver shall enter an intersection or a marked crosswalk or drive onto any railroad grade crossing unless there is sufficient space on the other side of the intersection, crosswalk, or railroad grade crossing to accommodate the vehicle

he or she is operating without obstructing the passage of other vehicles, pedestrians, or railroad trains notwithstanding any traffic-control signal indication to proceed." ALA. CODE § 32-5A-61.

Considering the undisputed evidence in the light most favorable to Murray, and the disputed evidence in the light depicted by the video, the Court finds that Murray entered the crossing in violation of Alabama Code §§ 32-5A-150 and 32-5A-61. *Scott*, 550 U.S. at 381, 127 S. Ct. at 1776. The lead locomotive of the CSX freight train that hit Murray's truck was equipped with an Event Data Recorder ("EDR") and a Locomotive Digital Video Recorder ("LDVR"). An EDR is an electronic computer device that the Federal Railroad Administration ("FRA") requires to be on all locomotives. An EDR records information from the locomotive such as speed, brake pressure, distance traveled, horn, bell, and other things, whereas a LDVR records what is visible in front of the locomotive. According to the EDR, the train was traveling no more than 29 miles per hour for at least 30 seconds prior to the emergency application of the train's brakes. Doc. 62-7 at 3. The locomotive's horn was blown, and bell was ringing for more than 30 seconds prior to the emergency application of the train's brakes. *Id.* The locomotive began blowing its horn and ringing its bell over one-quarter mile before reaching the subject grade crossing. *Id.* According to Shawn Robinson, a Road Foreman of Engines with CSX, the locomotive fully complied with the federal regulation of sounding the locomotive's horn at least 15 seconds before entering the crossing and concluded that the train was traveling below the FRA speed limit of 30 miles per hour. *Id.* at 4. The LVDR shows that the traffic control devices at the Madison Street grade crossing were fully activated when Murray's truck pulled onto the crossing and stopped on the tracks in the path of the train. *Id.* at 5.

Based on the facts before the Court, and drawing all reasonable inferences in favor of the non-movant, the Court finds that under binding precedent, Murray's contributory negligence was

the sole proximate cause of both Plaintiffs' injuries. As a result, CSX is entitled to summary judgment as to all claims asserted by Plaintiffs.

## V. CONCLUSION

The Court finds CSX's motion for summary judgment (Doc. 60) is **GRANTED**. The Court will issue a final judgment separately pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 4th day of August 2022.

                                             s/Terry F. Moorer
                                            TERRY F. MOORER
                                            UNITED STATES DISTRICT JUDGE